Davis, Judge,
delivered the opinion of the court:
In 1957, plaintiff, a selective service registrant, was found medically qualified for general service in the Army. He was determined to be acceptable despite strong indications that, psychiatrically, he was a poor military risk.[1] On this medical finding, he was inducted into the Army on June 28, 1957. Four days later, on July 2, 1957, he had to be placed in an Army hospital because of his bizarre behavior and paranoiac delusions. After an extended period of hospitalization — during which there were definite symptoms of *3 illness and he was given drug treatments and electro-convulsive therapy — a medical board decided that his continued psychiatric disorder rendered him unfit for further military service and therefore that he should be ordered before a Physical Evaluation Board to consider his separation from the service. Such a board was convened and, after a hearing at which plaintiff was represented by retained counsel, recommended that he be found permanently disabled from further service by reason of a psychiatric condition which antedated his induction and was not permanently aggravated by military duty. The Physical Beview Council affirmed these conclusions (except to find that the disability “may be permanent”) and this action was approved by order of the Secretary of the Army. On March 17, 1958, plaintiff was discharged (effective March 18th) by reason of physical disability, without severance pay.
In this suit plaintiff attacks his discharge as invalid and seeks active duty pay from that time.[2] The only substantial claim he now presses is that he did not receive a full and fair hearing before the Physical Evaluation Board because the Army did not furnish his civilian attorney a significant regulation bearing on the prime issue before the Board, i.e., whether plaintiff’s pre-existing condition was aggravated by his military duty.[3] Since it was quite clear that plaintiff suffered from a psychiatric disorder before joining the Army, it was critical to the benefits he could receive (on separation) whether his service had aggravated that condition. If not, he was entitled to no more that the discharge-without-severance-pay which he received.
The facts on which plaintiff relies to show that he was not given a fair opportunity to establish such service-aggravation are these: When plaintiff was directed to appear before a Physical Evaluation Board at Valley Forge Army Hospital, *4 his father was informed by the Board of the pending proceedings and that a Major Powers (a social service officer) had been appointed as military counsel for plaintiff. The letter also said that “You have the right to be present at the hearing and to be represented by counsel of your selection, civilian or military, rather than have the appointed counsel.” Plaintiff’s father notified the Board that Robert J. McKeever, a New York lawyer, “is to be considered as counsel in association with Major John A. Powers, Jr., who has been appointed Military Counsel to represent my son.” In telephone conversations with Major Powers, Mr. McKeever asked him to send on “all the pertinent regulations covering the subject matter of the hearing,” and in a letter to the major he asked for a photostatic copy of the file. Major Powers (who was not a lawyer) forwarded the records and two regulations relating to plaintiff’s case — Army Regulations No. 685-40A, “Personnel Separations: Physical Evaluation for Retention, Separation or Retirement for Physical Disability,” and No. 635-40B, “Personnel Separations: Physical Evaluation for Retention, Separation, or Retention [sic].” But the major did not transmit Army Regulations No. 600-140, “Personnel: Line-Of-Duty Determinations.” This latter regulation was significant because it indicated that pre-existing psychiatric conditions like plaintiff’s would not be considered as incurred in line of duty unless “service-aggravated by unusual stress in the service.”
Without knowledge of AR 600-140, Mr. McKeever (who had served in the Judge Advocate General’s Department of the Army from April 1943 to February 1946) prepared his case on the assumption that, in order to deny plaintiff disability benefits, the Army would have the specific burden of proving that plaintiff’s psychiatric disability while in the Army was due to the natural progress of the disease rather than to service-aggravation. For this position, Mr. McKeever relied on an opinion of the Chief Counsel of the Coast Guard (see finding 16(e)) which had been published in the Digest of Opinions of the Judge Advocates General of the Armed Forces.
At the hearing, Mr. McKeever proceeded to present his case on this basis until the president of the Physical Evalúa *5 tion Board called bis attention to the principles of AB 600-140. Counsel then realized for the first time that the standard for determining the service-aggravation of a pre-existing psychiatric condition of plaintiff’s type would be “unusual stress in the service,” and that proof of routine military activity would probably be an inadequate foundation. With this turn of events he requested a continuance so that he could present this particular question to, and obtain new evidence from, the private psychiatrist who had treated plaintiff in 1955. The Board refused a continuance but indicated to Mr. McKeever that he would have the opportunity to present a statement or evidence by the doctor for consideration by the reviewing authorities in the Army. Shortly after the close of the hearing, the Board recommended that plaintiff be found physically unfit for service by reason of a pre-existing-psychiatric condition which was not permanently aggravated by his military duty. The Board felt that there was no evidence of any unusual stress during plaintiff’s very short period of basic training (before he was hospitalized).
Some time thereafter plaintiff’s counsel submitted a written rebuttal to the Physical Evaluation Board’s findings, including a 45-page deposition by the private physician. With this rebuttal before it, the Physical Beview Council affirmed the substance of the Evaluation Board’s determination and the Secretary then approved the Council’s action.
We cannot hold that the failure to furnish Mr. McKeever with a copy of AB 600-140 before the hearing, or to grant him a continuance when that regulation was brought to his notice, destroyed the “full and fair hearing” to which plaintiff was entitled under 10 U.S.C. § 1214.[4] A client-selected lawyer in a civilian proceeding cannot complain, if he happens to miss published materials controlling the case, that his client has been deprived of due process — absent such gross lack of representation by the counsel as would make the proceedings a farce, a mockery, or a miscarriage of justice. Cf. O'Malley v. United States, 285 F. 2d 733, 734 (C.A. 6, 1961); Mitchell v. United States, 259 F. 2d 787 (C.A.D.C.), cert. denied, 358 U.S. 850 (1958); Edwards v. United States, 256 F. 2d 707 *6 (C.A.D.C.), cert. denied, 358 U.S. 847 (1958); Diggs v. Welch, 148 F. 2d 667 (C.A.D.C.), cert. denied, 325 U.S. 889 (1945). We think that there is no difference for a military tribunal. The umbrella of military paternalism, spacious though it be, is not wide enough to cover the outside civilian lawyer. Such an attorney, privately employed to represent a soldier in a military proceeding, has no right to expect that the Army will furnish him the published legal materials bearing on his case. As elsewhere in our adversary system of justice, available legal materials are for the retained lawyer to find and evaluate.
AB, 600-140 was not a secret or classified directive; it was a regularly published Army regulation, probably no more available in many sections of the country than Congressional committee reports or hearings, but nevertheless reachable by knowledgeable lawyers or by those who work to make themselves knowledgeable. Such military regulations have long been an accepted component of the corpus of military law, subject to judicial notice. Ex parte Reed, 100 U.S. 13, 22 (1879); Caha v. United States, 152 U.S. 211, 221-22 (1894). There is no doubt that Mr. McKeever, an attorney of over twenty years’ standing who had served under the Judge Advocate General for almost three years, could have learned about (and obtained) AB 600-140 if he had not rested content on the mistaken assumption that all the appropriate regulations had been sent to him.
He made this assumption because he had asked the appointed military counsel (Major Powers), whose professional status he did not know, to forward all the pertinent regulations. This additional factor does not change the rule. The Government cannot be held responsible because the major failed to fulfill the request. He was simply acting as co-counsel to accommodate Mr. McKeever. No regulation or requirement demanded that the latter be supplied with the pertinent regulations; AB 635-40B (par. 16: “Inspection of records”) did give the soldier’s counsel the right to see “all pertinent papers in the case,” but this plainly referred to the medical and other personnel records, not to Army Begulations or similar legal materials. Major Powers’ designation as military counsel, who would cooperate with or defer to civil *7 ian counsel as the claimant desired, was not the equivalent of a warranty by the Government that the major would not make mistakes in rendering requested assistance.[5] Nor was there any guarantee in the Board’s statement to plaintiff’s father (after indicating that the parents could hire a civilian lawyer or appear themselves for their son) that “Major Powers will be glad to assist you in any way possible”; this simple proffer of help obviously did not mean that the Government would be liable for everything the officer did or neglected to do as an assistant.
Moreover, the regulations which Major Powers forwarded .to Mr. McKeever should have alerted the latter to AB. 600-MO (the missing regulation) and its bearing on the problem of service-aggravation of a pre-existing condition. AB 635-40B, which Mr. McKeever received, declared explicitly that “in determining whether the disability of a member [of the Army] was incurred prior to entrance into service, and, if so, whether it was aggravated thereby, the principles set out in AB 600-140 will be followed.” This caution should have been noted and further research made in the direction the arrow pointed.
It follows, we think, that the Physical Evaluation Board did not abuse its discretion when it refused to grant a continuance after plaintiff’s counsel was discovered to be unaware of AB 600-140. The fault and the responsibility were not the Government’s, but private counsel’s. The basic facts and considerations were already before the Board, and counsel’s representation of plaintiff had certainly not been a farce, a mockery, or totally wanting. In the circumstances, the Board did not act unfairly in confining counsel to a written rebuttal for use by the reviewing authorities. Plaintiff’s position on AB 600-140 would thus be presented before the ultimate decision was made. As we have noted, *8 a lengthy rebuttal (including a medical deposition) was submitted and considered.
The action of the reviewing authorities is another, independent, reason why plaintiff can gain nothing from Major Powers’ failure to transmit all the pertinent regulations. The adverse findings of the Physical Evaluation Board were advisory, not conclusive (AN 635-40B, par. 25 a, and 1). Apprised of plaintiff’s full argument based on Alt 600-140, the Review Council and the Secretary approved those findings and discharged plaintiff. The final decision was thus founded on a full record and plaintiff can have no complaint that that decision was taken without an adequate presentation on his side.[6] Plaintiff argues that, if the Physical Evaluation Board had itself considered the additional evidence and then decided in his favor, a reversal by the Physical Review Council would have entitled him to further consideration by the Physical Disability Appeal Board (See AR 15-160). But this speculative loss of a second administrative appeal is too slight and hypothetical to prevent the appellate review actually had within the Army from curing the defect (assuming there was one) in the proceeding before the Physical Evaluation Board.[7]
Plaintiff is not entitled to recover. His petition is dismissed.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Richard Arens, and the briefs and argument of counsel, makes findings of fact as follows:
1. (a) Plaintiff was bom in Chicago, Illinois, on March 28, 1933, and is a resident of Port Chester, New York.
(b) In this suit he seeks active duty pay commencing after his discharge from military service effective March 18, 1958, by reason of physical disability without severance pay.
*9 2. (a) Plaintiff completed Ms pre-college education at a military academy and then enrolled in the University of Miami, Coral Gables, Florida, where he was selected for the Air Force Reserve Officers’ Training Corps.
(b) On March 27, 1951, plaintiff registered with the Selective Service System at Local Board No. 11, WMte Plains, New York.
(c) On July 17, 1953, Selective Service Board, Local No. 11, White Plains, N.Y., was notified by the Air Force ROTC group that plaintiff was no longer a member of that organization at the University of Miami.
3. On May 26, 1955, plaintiff underwent a preinduction medical examination at Miami, Florida, and was found qualified for general service. No disqualifying defects were noted. Plaintiff was thereupon certified as fully acceptable for induction into the armed services.
4. (a) In June of 1955 plaintiff, wMle a student at the University of Miami, became “self-conscious and apprehensive” when he was in a group of people. For a period of 30 days he locked himself in his room, to which he admitted only a friend bringing food.
(b) On July 20,1955, upon returning to New York at the end of the school term, plaintiff sought the psychiatric services of Dr. Stanley Lesse who admimstered psychotherapy treatment to plaintiff until mid-December 1955, at which time the treatment was stopped because there was marked improvement in plaintiff’s condition. Plaintiff had been working as an assistant to a landscape architect during the period of time he was undergoing treatment by Dr. Lesse. Upon the conclusion of the treatment plaintiff went to live with his mother’s sister in Los Angeles, California. Dr. Lesse did not see plaintiff from December 1955 until he next examined plaintiff on February 5, 1958.
(c) By letter dated October 10, 1955, Dr. Stanley Lesse inquired of Local Draft Board No. 11, WMte Plains, N.Y., as to the name of the board’s medical consultant, in order that medical information concerning plaintiff might be furnished. A response of the board dated October 19,1955, asked for the submission of any medical information concerning plaintiff.
(d) By letter dated October 28, 1955, Dr. Stanley Lesse *10 advised Local Draft Board No. 11, White Plains, N.Y., as follows:
Mr. Harold Hopkins, Jr., has been a patient of mine during the past three months, during which time he has had intensive psychotherapy. From a psychiatric basis, I consider this patient a poor candidate for Military Service. To go further, it is my definite opinion that there is a very good chance of a psychotic breakdown should he be required to face the rigors of military life. Such a breakdown would not be the first, and I believe we would save the patient great discomfort, and save the Government considerable money and difficulty, by taking these facts into consideration.
I hope this information will be of help to you.
Sincerely yours,
(S) Stanley Lesse,
StaNlet Lesse, M.D.
P.S.: I believe that this information should not be kept in an open file, because of its nature.
The letter was received by the board and placed in plaintiff’s files at the board.
5. On April 23, 1956, plaintiff signed a Selective Service System form in which he advised Local Board No. 11, White Plains, N.Y., that he had completed 2y2 years of college; that he was then employed in landscaping; that he had been with his then employer for 3 months; and that he did not claim any physical defect that he thought might cause him to be rejected for service in the Armed Forces.
6. On June 13, 1956, plaintiff was medically examined in New York City for induction. The report of the medical examination reads in part as follows:
42. Physical examination, 1955 seen. He is 23 years old, single, college education, was working as a landscaper. He has speech difficulties, is also under the influence 'of liquor. Talks constantly and advertises his “saneness” with multiple words. Letter Dr. Lesse, a psychiatrist — attached, verifying 6 months treatment. “I am very fit just now,” he repeats and repeats.
At the present time, his real emotional status cannot be evaluated, but his hangover and his performance here indicate that he is Phychiatric Disorder, could be reexamined after one year.
*11 78. * * * 13 June 56 — Disqualifying defects found upon inspection. Psychiatric disorder. Emotional disturbance not able to be evaluated because of his alcoholic debauche, not verified by psychiatrist.
74. Summary of Defects and Diagnoses (List diagnoses with item nv/inbers)
S4 42 — Psychiatric disorder. Emotional disturbance not able to be evaluated because of his alcoholic de-bauche, not verified by psychiatrist. (unpit por military SERVICE) (PARTIAL EXAMINATION)
75. Recommendations * * *
Physically disqualified. See Item 74, S4. Be-examination believed justified in one year.
77. Examinee is not qualified for military service.
7. On March 20, 1957,, plaintiff was given a preinduction examination at Los Angeles, California, and found fully acceptable for induction into the Armed Forces and qualified for general service. The report of the medical examination stated, in part, as follows:
Usual childhood diseases — NS. Automobile accident concussion 6 weeks ago — NCD. Had high blood pressure 2 years ago — NS. Allergic to penicillin, NCD. Growth on neck 15 years ago — NS. Furunculosis in past — NS. Takes long time to fall asleep, NS.
neuropsychiatric consultation : Gets generally nervous under stress. He no longer has nightmares and worries are normal. There is some anxiety of a mild type but constitutes no disability at this time.
8. On June 28, 1957, plaintiff was given a physical inspection at Baltimore, Maryland, and found acceptable for induction into the Armed Forces. On the same day he was inducted into the United States Army at Baltimore and sent to Fort Jackson, South Carolina.
9. (a) On July 2, 1957, plaintiff was admitted to the United States Army Hospital, Fort Jackson, South Carolina, because of bizarre behavior. The clinical records disclose that, according to plaintiff, he was being investigated by the Federal Bureau of Investigation and that being admitted to the hospital was part of the investigation. Plaintiff spoke of voices in his ears telling him what to do and told of a device which enabled the FBI to listen in on his conversation and gain control of his thoughts. -
(b) On July 22, 1957, plaintiff, while shaving in the *12 hospital washroom, suddenly removed the blade from the razor and incised the lobe of his left ear. He was subdued and removed to his ward.
(c) On July 28, 1957, plaintiff while at the hospital was again given shaving material, including a blade razor. He removed the blade and slashed the right and left sides of his neck and his right wrist.
(d) Plaintiff was placed on high doses of Thorazine without any appreciable response. The diagnoses on plaintiff’s clinical record at the hospital read as follows:
DIAGNOSES: (1) 3003. Schizophrenic reaction, paranoid type, chronic, severe, manifested by delusions of persecution, visual and auditory hallucinations, flattening of affect, lack of association of ideas, inappropriateness, unpredictability, suicidal attempts; stress, minimal; induction into military service, routine life prior to entering service; premorbid personality and predisposition, marked; patient was seen by psychiatrist for eight months prior to entry into service; impairment for further military service, marked. LD, No, EPTS.
ADDITIONAL DIAGNOSIS : 28 Jul 57
(2) 8210. Wound, lacerated, superficial, neck and right wrist, no artery or nerve involvement. Self inflicted about 0930 hours, 28 Jul 57, when patient was in a mentally unsound state and slashed his neck and wrist with a razor blade while on Ward 57. LD, Yes, secondary to Diagnosis #1.
10. In view of plaintiff’s poor response to therapy it was felt that he required specialized psychiatric care, and accordingly, he was on August 13, 1957, transferred from the United States Army Hospital, Fort Jackson, South Carolina, to the Valley Forge Army Hospital, Phoenixville, Pennsylvania, where he was placed in a closed ward. Electro-con-vulsive therapy was instituted, but during the treatment plaintiff sustained compression fractures in D3, D4, and D5 vertebrae.
11. The body of a letter dated August 27, 1957, addressed to plaintiff’s mother from John A. Powers, Chief, Social Services, Valley Forge Army Hospital, reads as follows:
This is in reply to your recent letter concerning your son, Pvt. Harold Hopkins, US 52 455 471.
*13 Your son is suffering from a nervous breakdown, which is an exaggeration of his previous illness, the result being that he is confused and disoriented. As he is still undergoing observation, no definite prognosis has been determined.
Rather than discuss Harold’s illness in a letter, his doctor would prefer to talk with you when you come to visit. Please consult our previous letter for visiting days and hours.
I have attempted to obtain from your son the name and address of the psychiatrist he saw in 1955, so that we could consult with him as to his medical history, but Harold is too confused to remember the name and address. I would appreciate it if you would forward us this information.
If I may be of any further service, please do not hesitate to contact me.
12. The body of a letter dated September 11, 1957, addressed to plaintiff’s mother from David P. Jentsch, Assistant Chief, Social Services, Yalley Forge Army Hospital, reads as follows:
This is to acknowledge receipt of your letter, concerning your son, Pvt. Harold Hopkins, US 52 455 471.
I want to thank you for sending the information contained in your letter. I have written to the doctor, requesting any medical information he may have.
In consultation with your son’s doctor, he has informed me that Harold is showing consistent improvement. He feels that additional visits by you at your convenience would aid your son in attaining better health, at a quicker pace. Visits by loved ones are often of benefit in cases such as this. Therefore, we urge you to visit and write him as often as possible.
If I can be of any further service, please do not hesitate to contact me.
13. On December 17, 1957, plaintiff underwent a medical examination at Yalley Forge Army Hospital. The report of the examination reads in part as follows:
38. 8110 Fracture, compression, D3, 4 and 5. 20% AI: During Electro-shock treatment this hospital. LOD: Yes.
42. 3003 Schizophrenic reaction, paranoid type, chronic, severe ¿ manifested by inappropriate affect, confusion, paranoid delusions, auditory hallucinations and suicidal attempts. LOD: NO, EPTS.
*14 The clinical abstract set forth plaintiff’s pre-service background of mental unsoundness. Plaintiff, in the report of medical history, stated that his present health was “Good, as far as I know.”
14 On December 19, 1957, a medical board convened at Valley Forge Army Hospital on plaintiff’s case and made the following findings and recommendations:
1. 3003 Schizophrenic reaction, paranoid type, chronic, severe; manifested by inappropriate affect, confusion, paranoid delusions, auditory hallucinations and suicidal attempts. Predisposition: None_ evident. Stress: Minimal, routine military duty. Condition: Improved. Impairment: Marked, for further military service. LCD: NO, EPTS. (VA Code No. 9003)
2. 8110 Fracture, compression, vertebrae. Vertebrae D3, 4&5. 20% AI: During electroshock treatment this hospital. Exact date unknown. Asymptomatic. LOD: Yes. (VA Code No. 5285).
3. Patient is mentally competent for pay purposes and the patient has the capacity to understand the nature of or to conduct or cooperate in Physical Evaluation Board proceedings.
4. The patient is not motivated for further military service.
5. The patient is medically unfit for further military service because of Diagnosis #1 above.
6. Further hospitalization and treatment not required.
7. Induction Physical Examination performed 28 June 57, Washington, D.C.
Plaintiff’s disability in nontechnical language was stated to be: “Prolonged departure from the normal manner of thinking, feeling and acting.” The board recommended that:
1. The patient appear before a Physical Evaluation Board for separation from the service.
2. The patient be discharged to Ms own custody.
15. (a) On December 20, 1957, plaintiff was directed to appear before a Physical Evaluation Board at Valley Forge Army Hospital. The body of a registered letter of the same date, addressed to plaintiff’s father, sent on behalf of the president of the Physical Evaluation Board, reads as follows:
The Physical Evaluation Board plans to consider the case of your son, Private Harold L. Hopkins, on Mon *15 day, 6 January 1958, at nine o’clock, in Building 91A, Valley Forge Army Hospital, Phoenix ville, Pennsylvania. However, this date may be extended by the President of the Board upon receipt of your written request, with reason therefor, or the Board will consider the case at an earlier date if you so desire or consent. A printed form and a self-addressed envelope are enclosed for your convenience in replying to this letter.
The Physical Evaluation Board is a Board of Officers appointed to determine the following facts regarding each patient referred to it by the Commanding General, Valley Forge Army Hospital:
a. If the patient is fit or unfit for further military service by reason of physical disability.
b. If the disability is or is not the result of intentional misconduct or willful neglect.
c. If the disability was or was not incurred during a period of unauthorized absence.
d. If the disability is or is not the proximate result of the performance of military duty.
e. The percentage of disability, according to the Veterans Administration standards.
Major John A. Powers, Jr., MSC, Valley Forge Army Hospital, has been appointed as Military Counsel to represent your son before the Board. You have the right to be present at the hearing and to be represented by counsel of your selection, civilian or military, rather than have the appointed military counsel. However, your presence, or counsel of your selection, will be at no expense to the Government. You have the right to procure and introduce witnesses, obtain documentary evidence and to take such other action as may be deemed necessary in the interest of your son. Major Powers will be glad to assist you in any way possible.
The hearing will be as scheduled if no reply is received from you by the date indicated above and the certified mail receipt indicates that you have received the notification.
(b) Under date of December 31, 1957, plaintiff’s father notified the Physical Evaluation Board that he would be present when the board considers the case, and that Hubert J. McKeever “is to be considered as counsel in association with Major John A. Powers, Jr., who has been appointed Military Counsel to represent my son.” Mr. McKeever had been a practicing attorney since 1932 and from April 1943 until February 1946 had been an officer in the Judge Advocate General’s Department of the United States Army. Major *16 Powers, who had been appointed by the convening authority of the Physical Evaluation Board as Military Counsel for plaintiff, was not a lawyer.
(c) Military and civilian counsel procured a deferment of the board’s scheduled hearing until January 13, 1958, so that certain material could be procured by civilian counsel in preparing the case.
16. (a) Following his retention as civilian counsel to plaintiff, Mr. McKeever had several telephone conversations with Major Powers, plaintiff’s Military Counsel, in the course of which Mr. McKeever asked Major Powers to send him records pertaining to plaintiff’s case, including “all the pertinent regulations covering the subject matter of the hearing.” Mr. McKeever did not know at the time whether or not Major Powers was a lawyer.
(b) The body of a letter, dated December 28, 1957, from Mr. McKeever to Major Powers reads as follows:
So that I may make proper preparation for the hearing to be held in the above case relating to Private Hopkins, I would appreciate being forwarded a photostatic copy of the file so that I may give it appropriate study.
In my handling of these matters before, I have found that it has been impossible to properly prepare the case with a perfunctory examination of the file shortly before the hearing is to be held.
I am enclosing an authorization signed by Private Hopkins authorizing you to forward to me the photostatic copies of the records.
I can appreciate that the procurement of the photostatic copies may cause the hearing to be delayed. Would Private Hopkins’ “leave” be extended until the actual formal hearing? I am assembling some data but some of it may already be in your files.
(c) Mr. McKeever received from Major Powers records and regulations (Army Kegulations No. 635-40A and Army Regulations No. 635-40B) relating to plaintiff’s case but did not receive Army Regulations No. 600-140, dated August 10, 1956, entitled “Line-Of-Duty Determinations”, reading in pertinent part as follows:
d. Injury, disease, or death, or condition causing in-jwry, disease, or death sustained or contracted while neither on active duty nor engaged in authorized train *17 ing in active or reserve duty status. Irrespective of length of service, a member of the Army will be presumed to have been in sound physical and mental condition upon entering active service or authorized training in an active or reserve duty status. In order to overcome this presumption, it must be shown by substantial evidence that the injury, disease, death, or condition causing injury, disease, or death was sustained or contracted while the individual was neither on active duty nor engaged in authorized training in an active or reserve duty status. Further, even if the foregoing presumption is overcome by such evidence, it is presumed that any additional disability or death resulting from the preexisting injury, disease, or condition was caused by service aggravation thereof. Only specific findings of “natural progress” of the preexisting injury, disease, or condition, based upon well-established medical principles, as. distinguished from medical judgment alone, are sufficient to overcome the presumption of service aggravation. Any disability having its inception in “line of duty” during one period of service or authorized training in any of the uniformed services (as defined in Section 102 (a), Career Compensation Act of 1949) which recurs or is aggravated during a subsequent period of service or authorized training, regardless of the intervening time or difference in grade or status, should be deemed to have recurred or have been aggravated in line of duty, unless such recurrence or aggravation is determined to fall within the purview of a, b, or c above. Injuries or death directly resulting from mental unsoundness which had its inception at a time when the individual was neither on active duty nor engaged in authorized training in an active or reserve duty status should be considered to have been incurred not in line of duty, although not because of the individual’s own misconduct.
(1) Presumption of sound condition. Medical judgment alone, as distinguished from well-established medical principles,. will not be considered the “substantial evidence” required to rebut the presumption of a member of the Army’s sound condition at the time of his entrance into active military service. However, manifestation of lesions or symptoms of chronic disease, so close to the date of the patient’s entry into active service that they could not have originated after such entry, constitute “substantial evidence” that the disease existed prior to the entry. Likewise, manifestation of disease within less than the minimum incubation period after *18 the patient’s entry into active service will be “substantial evidence” of inception prior to the service.
(2) Service-aggravated condition. Any increase in disability during active service resulting from a condition that existed prior to the active service will be presumed to have been service-aggravated, unless it can be proved otherwise on the basis of well-established medical principles. Medical or surgical treatment furnished during service for preexisting conditions does not of itself establish service aggravation. Mere recurrences of certain diseases within a short period after the patient’s entrance into active service, such as epileptic seizures, seasonal asthma, recurrent dislocations, etc., do not establish service aggravation. Also, incapacitating defects due to certain diseases, such as neoplasms, most endocrine disturbances, epilepsy, arteriosclerosis, and arthritis, and other chronic and degenerative diseases in which the onset is insidious and progress is slow, are of themselves not evidence of increased disability. Unless there was some pertinent local injury, or an abrupt and sudden pathological development during active service, such incapacitating defects may arise as a natural consequence of preexisting conditions, and not be incident to or aggravated by service. Acute infections, such as pneumonia, active rheumatic fever (even though recurrent) , acute pleurisy, acute ear disease, and sudden developments, as hemoptysis, lung collapse, perforating ulcer, decompensating heart disease, coronary occlusion, or thrombosis or cerebral hemorrhage, occurring while in service, will be regarded as service-incurred or service-aggravated, unless it can be clearly and unmistakably shown that there was no increase in severity during active service.
❖ ❖ ❖ * £
/. Psychoses. Schizophrenic and manic-depressive reactions and other psychoses of a similar nature are characterized by a tendency toward chronicity with remissions and exacerbations. Disorganization occurring in an unfamiliar environment may at times simulate illness of recent origin when, in fact, the process has existed unrecognized for a considerable period of time. In the absence of unusual stress such exacerbation represents the natural course of the illness. Careful differentiation should be made between acute psychotic reactions of recent origin and exacerbations of chronic psychoses. The time of inception of a psychotic reaction may be established by consideration of all pertinent factors, including a careful evaluation of the past history in the light of subsequent developments.
*19 (1) In line of duty. Ordinarily tlie following will be considered to be in line of duty:
(a) Cases of schizophrenic reaction, manic-depressive reaction, and psychoses of similar nature, in individuals in whom evidence of the disorder in question did not manifest itself prior to entry into service and is so remote from time of entry into service as to contraindicate its existence prior to service.
(b) Psychiatric conditions occurring in individuals in whom such conditions existed prior to entry into the service, but where there is evidence to show that the disorder has been aggravated by unusual stress in the service.
(2) Not in line of duty. Ordinarily the following will be considered to be not in line of duty: cases of schizophrenic reaction, manic-depressive reaction, and psychoses of similar nature detected after entry into service, provided that prior existence can be established and that the psychotic reaction has not been service-aggravated by unusual stress in the service. The existence of the disorder prior to service may be established on the basis of credible evidence of psychotic behavior or symptoms antedating active service, or when, in consideration of such factors as degree of development, mode of onset, rate of progression, and length of service, such finding is in accord with established medical principles. Such evidence need not necessarily show that the individual was treated for psychosis or admitted to hospital for psychosis during the time period in question.
(d) AR 635-40B (“Personnel Separations: Physical Evaluation for Retention, Separation or Retention [sic]”), dated August 13,1957, which Mr. McKeever did receive from Major Powers, provides, in paragraph 25 (among other things) :
In determining whether the disability of a member was incurred prior to entrance into service, and, if so, whether it was aggravated thereby, the principles set out in AR 600-140 will be followed.
(e) A published opinion, dated May 10,1955, of the Chief Counsel of the Coast Guard[8] contains the following:
The question of service incurrence or service aggravation should be based upon all procurable and assembled data *20 and every doubt with respect to service origin should be resolved in favor of the evaluee. It follows that there is a presumption that increase of severity of a preexisting disability is due to service aggravation as opposed to natural progression. In order to rebut this presumption there must be a specific finding that the increase in disability was due to the natural progress, of the disease. This specific finding of natural progression must be supported by medical testimony that an increase of symptoms or severity o.f the disability would have resulted regardless of whether the man had entered the service. Such a finding must not be based solely upon the personal experience of the medical members of the Physical Evaluation Board but upon accepted medical principles. The record in this case is equivocal on this point and in the light of the facts it is questionable that the injury can be said to have been the result of the natural progression of the basic condition and would have occurred regardless of whether or not the man had entered the service.
17. (a) An Army Physical Evaluation Board convened at Valley Forge Army Hospital on the morning of January 13,1958, for a formal hearing on plaintiff’s case. In the opening statement Mr. McKeever referred to the opinion quoted in finding 16(d), swpra, and stated in effect that he approached the matter of production of proof on the basis of the opinion.
(b) In the course of an examination of an army medical officer in the afternoon session on January 13, 1958, the following statement was made by the president of the Physical Evaluation Board:
I think this will probably clear up Mr. McKeever to some extent. See paragraph 5/ of AR 600-140 here. (Counsel read it). In other words, there is no medical principle on this thing. It is based on experience, evaluation, opinion * * *.
This was the first time that Mr. McKeever was aware of Army Regulations No. 600-140, dated August 10, 1956.
(c) During the Physical Evaluation Board hearing, subsequent to the incident set forth in finding 17(b), supra, Mr. McKeever requested copies of plaintiff’s medical record to submit to Dr. Stanley Lesse, who had previously treated plaintiff, in order to obtain Dr. Lesse’s opinion on the ques *21 tion of unusual stress and aggravation during active duty insofar as plaintiff’s disability was concerned. Mr. McKeever also requested a continuance pending receipt of the opinion from Dr. Lesse. The president of the Physical Evaluation Board informed Mr. McKeever that he would be furnished with plaintiff’s record insofar as possible, but did not grant a continuance. The president of the Physical Evaluation Board further informed Mr. McKeever that the action of the Physical Evaluation Board was a recommendation only and was not subject to any degree of finality until approved by the Secretary of the Army, and that Mr. McKeever could offer further evidence by way of rebuttal to the action of the board.
(d) Army Regulations No. 635-40A, dated August 13, 1957, entitled “Physical Evaluation for Retention, Separation or Retirement for Physical Disability” provide in part as follows:
16. Counsel. The authority appointing a physical evaluation board will designate competent, mature officers with legal training and/or court or board experience, and of sound judgment, who are familiar with board procedures, as counsel to represent members appearing before that board. Counsel will, if requested, render assistance to members in the exercise of their right to rebuttal (including assistance in the preparation thereof) to the recommended findings of a board and to any subsequent proceedings prior to final action by the Secretary of the Army as provided in paragraph 27. In every case in which the member is unable to understand or participate in the board proceedings because of loss of mental function or derangement due to a physical or mental disease or injury, such counsel will be a member of the bar of a Federal Court or the highest court of a state, and the order appointing the board will indicate such qualification.
^ ‡ ^ ^
23. Reconmened boards. Prior to final action by the Secretary of the Army, the proceedings of a properly constituted physical evaluation board may be returned to the same board for further investigation, further consideration of findings, correction of errors, or for other reasons. When proceedings are so returned, the reconvened board will include as many members of the original physical evaluation board as may be practicable. *22 However, proceedings may be conducted properly even though no members of the original board are available, provided that the board is otherwise properly constituted and the members comprising the reconvened board are included in the composition of the board as originally appointed or have been added to the original board by amendment of the original orders. Wien new findings are made by a reconvened physical evaluation board, they become the only findings, and the Secretary of the Army will not thereafter take action upon the original findings.
18. (a) Under date of January 13, 1958, the Physical Evaluation Board made the following recommended findings: that plaintiff was then physically unfit to perform the duties of his office, rank or grade by reason of physical disability; that plaintiff’s disability existed prior to the term of his service or was not service connected; that plaintiff’s disability was permanent, but that it was not permanently aggravated by military duty. The diagnosis was as follows:

The board made the additional recommendations and remarks:
Release to own care without severance pay.
The patient is mentally competent for pay purposes and the patient has the capacity to understand the nature of or to conduct or cooperate in Physical Evaluation Board proceedings.
The patient is not motivated for further military service.
The patient is unfit for further military service.
Over the signature of its president, the board stated:
*23 Subject individual entered active military service on 28 June 1957 and had only four days’ active duty prior to hospitalization for his present illness.
Private Hopkins appeared before the Board with both civilian and military counsel. He was also accompanied by his mother who sat through the open proceedings of the Board and also appeared as a witness in behalf of her son.
The fact that Private Hopkins had schizophrenia before he entered the service was never contested. The civilian counsel dwelt on the man’s apparent normal condition prior to his entry into the service, that the selective service personnel were notified of his illness prior to induction, that he was inducted regardless of the warning and in addition, his service aggravated his condition; therefore, the Army is responsible. In other words, the Army was warned of his “fragile” condition, they accepted him, and for that reason are now responsible.
The Board in closed session realized that an error was made in initially inducting this man. However, the clearcut evidence of the illness prior to his military service, the fact as testified by his mother that he became apprehensive when notified about his induction, and the lack of evidence denoting any unusual stress during his very short period of basic training negating any aggravation, caused this Board to recommend that the illness of Private Hopkins be considered as LOD: No, since it existed prior to his entry into service. If this recommendation is upheld by higher authority the members of the Board would not be surprised if a civil suit against the Government is in the offing. The basis of the suit would be the civilian counsel’s contention stated in the second paragraph above.
(b) On the same date plaintiff submitted a rebuttal statement that he did not concur in the findings of the Physical Evaluation Board. Mr. McKeever, plaintiff’s civilian counsel, requested an extension of time to February 24,1958, to file a rebuttal to the board’s findings and this request was granted. Mr. McKeever also requested, and was furnished, a copy of Army Regulations No. 600-140, dated August 10, 1956, for use in preparing the rebuttal.
19. By letter dated February 20, 1958, plaintiff’s counsel submitted to the Physical Evaluation Board a rebuttal to the findings recommended by the board. The rebuttal included a 45-page deposition of Dr. Stanley Lesse which *24 related, inter alia, to the question of service-aggravation of plaintiff’s disability during bis period of active duty in the army.
20. (a) On March 4, 1958, the Army Physical Eeview Council announced that it had reviewed the proceedings of the Physical Evaluation Board and considered the rebuttal in plaintiff’s case. The Army Physical Eeview Council recommended that the findings of the Physical Evaluation Board be modified by changing the duration of the plaintiff’s disability from “permanent” to “may be permanent.”
(b) On March 14,1958, the action of the Physical Eeview Council was approved by order of the Secretary of the Army.
21. On March 17, 1958, Special Orders Number 53 were issued at Valley Forge Army Hospital, pursuant to which plaintiff was relieved from assignment and discharged from military service effective March 18,1958, by reason of physical disability without severance pay.
22. (a) On March 19, 1958, plaintiff filed a claim for disability compensation with the Veterans Administration.
(b) The body of a letter dated April 14, 1958, addressed to plaintiff from the Veterans Administration reads as follows:
It has been necessary to deny monetary benefits in connection with your claim for disability compensation.
Before compensation payments can be authorized, it is necessary that the evidence on file show a disease or injury incurred in or aggravated by service in line of duty and disabling to a degree of 10% or more. The official records and all other evidence on file in your case at this time fail to establish that these requirements have been met.
It has been found that: your laceration of the neck and right wrist and spine fracture were incurred during your military service but these conditions are not shown to be disabling to a compensable degree. It has also been held that your nervous condition was present prior to induction and was not incurred in or aggravated by service.
If you have no further evidence to submit but have substantial reason to believe that the decision is not in accordance with the law and the facts in your case, you may appeal to the Administrator of Veterans Affairs at any time within 1 year from the date of this letter. If *25 you wish to appeal, you should so inform this office, and you will be furnished with VA Form 1-9 for that purpose.
23. (a) The body of a letter dated February 13, 1959, addressed to the then Secretary of the Army from plaintiff’s attorney reads as follows:
I represent Private Harold L. Hopkins, Service Number US 52 452 471, in the above entitled action in the United States Court of Claims for active duty pay. Private Hopkins was ostensibly separated from the Army on or about April 9, 1958, pursuant to the action of a Physical Evaluation Board. It is submitted that impartial review of the Physical Evaluation Board’s action will disclose that Private Hopkins was not given a full and fair hearing and, therefore, under the law his discharge pursuant to said Board’s action is illegal. On such assumption, Private Hopkins remains a de jure member of the Army entitled to receive basic pay.
It is requested that Private Hopkins be ordered to an appropriate armed forces hospital for further treatment and appearance before a Physical Evaluation Board, if such is indicated, and that his pay status be reestablished.
(b) A letter dated March 17,1959, addressed to plaintiff’s attorney from the Adjutant General reads in part as follows:
The record of proceedings, and the findings and recommendations of the Physical Evaluation Board in Mr. Hopkins’ case were carefully reviewed by the Army Physical Keview Council. The Council concurred in the findings of the Board with the modification that his disability was temporary in nature rather than permanent. Thereafter, the Secretary of the Army approved such modified findings and ordered Mr. Hopkins’ separation from the service without retirement or severance pay. Action thereon became final upon approval by the Secretary of the Army.
An application to the Army Board for Correction of Military JEtecords is the only means by which your client may secure administrative review of his case. That Board was established under the provisions of 10 US Code 1552 for the purpose of considering all applications to determine the existence of an error or injustice and to make recommendations to the Secretary of the Army. An application blank is inclosed for Mr. Hopkins’ use if he desires to avail himself of such review. It should not be inferred from the transmittal of this form that *26 an error or injustice was committed in this case, that a hearing will be held upon application, or that, if a hearing is held, favorable action will be taken. Each case is considered after a review of the full evidence presented and final determination is based on its individual merits.
In view of the fact that Mr. Hopkins is currently seeking judicial review of his case, any application for relief by the Army Board for Correction of Military Becords should be coordinated with the Department of Justice.
24= (a) On December 6, 1960, plaintiff filed an application with the Army Board for Correction of Military Bec-ords in which plaintiff requested the correction of his records : “ (1) To show that I was not separated from the Army in 1958 but was retained on an active duty status; and additionally or alternatively: (2) To show my placement on the temporary disability retired list effective Apr. 1, 1958 with a 100% disability rating.” Plaintiff stated that he believed the record to be in error or unjust in the following particulars: “1. That I was illegally separated for physical disability without a full and fair hearing which had been demanded. 2. That my physical disability was clearly incurred while I was entitled to basic pay by reason of aggravation.” Attached to plaintiff’s application was an affidavit dated August 30, 1960, of Bobert J. McKeever.
(b) On January 5, 1961, the Army Board for Correction of Military Becords requested the Physical Standards Division of the Surgeon General’s office to review the allegations contained in plaintiff’s application, together with the material attached thereto and the records, and advise the board as to whether or not plaintiff “should have been retired by reason of physical disability incurred in or aggravated by service on March 18,1958.”
(c) The body of the response, dated March 22, 1961, of the Physical Standards Division pertaining to plaintiff’s application reads as follows:
1. Becords in the case of the above-named individual have been carefully reviewed in this office and in the offices of the appropriate consultants to The Surgeon General.
2. The allegation that exposure to the Army environment in the form of routine administrative processing over a four day period represents unusual stress and *27 lias resulted in this case in permanent aggravation of a pre-existing psychiatric condition can not be accepted on the basis of established medical principles derived from a wide experience with this disease in the military service.
The opinion is expressed that placement of this applicant on TDBL at 100% on the basis of service aggravation would not have been warranted by the facts. It is further believed that in view of the demonstrated marked predisposition in this case and the obvious impairment for military service that retention in the active military service would not have been in the best interest of the government or the individual.
(d) On August 15, 1961, plaintiff’s attorney submitted to the Army Board for Correction of Military Becords a brief, together with two letters dated July 14 and 19, 1961, respectively, signed by Dr. Stanley Lesse. Plaintiff’s attorney advised the board that he was “now ready for further action, including a hearing, if such is required, before the Army Board for Correction of Military Becords.”
(e) By letter dated September 14,1961, the Acting Adjutant General advised plaintiff as follows:
I refer to your application for correction of military records concerning placement on the Temporary Disability Betired List with a 100% disability rating and retention in an active duty status.
The Army Board for Correction of Military Becords may deny an application if a sufficient basis for review has not been established.
After examining and considering your Army records and facts you presented, the Army Board for Correction of Military Becords determined on 30 August 1961 that insufficient evidence had been presented to indicate probable material error or injustice; accordingly, your application was denied.
In the absence of new and material evidence tending to show existence of error or injustice in the military records, further consideration by the Board is not contemplated.
Your counsel has been furnished a copy of this letter.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover and his petition is dismissed.

 Two years earlier, in 1955 while at college, plaintiff had exhibited definite signs of emotional disturbance which led him to seek medical help. After a period of treatment, his psychiatrist wrote to the draft board that plaintiff was “a poor candidate for military service. To go further, it is my definite opinion that there is a very good chance of a psychotic breakdown- should he be required to face the rigors of military life. Such a breakdown would not be the first, * * In June 1956, plaintiff appeared in an intoxicated condition for a pre-induction medical examination. The examining doctor was unable to evaluate the extent of his psychiatric or emotional disorder “because of his alcoholic debauche.” Later examinations, summary in character, apparently concluded that his “nervousness” was not enough to bar induction.

 Plaintiff lias not pursued in this court any claim that he should have been retired for disability or discharged with severance pay. His position is that the discharge was invalid and therefore ineffective to separate him from the Army and from active duty pay.

 Plaintiff does not contend that the mistake in inducting him precluded the Army from discharging him upon his breakdown immediately after entry into the service. Nor, as already indicated in footnote 2, does he now press the point that, on the record made within the service, the Army was required to find that his disability was service-aggravated.

 “No member of the armed forces may be retired or separated for physical disability without a full and fair hearing if he demands it.”

 There was no violation of regulations in appointing the major, a non-lawyer, as military counsel. AR 635-40A required a lawyer only when the soldier was unable to understand or participate in the proceedings “because of loss of mental function or derangement due to a physical or mental disease or injury” (see finding 17 (d)). This provision was inapplicable since, prior to the convening of the Physical Evaluation Board, a medical board had found that plaintiff had the capacity to understand the nature of or to conduct or cooperate in Evaluation Board proceedings (finding 14). The Evaluation Board made the same determination (finding IS (a)).

 As the practice of this court shows, it is certainly not a necessary element of a “full and fair hearing” (in non-criminal cases) that all evidence be taken orally before the deciding tribunal or officer.

 Plaintiff makes a frail argument that the proper Army official may not have approved the findings and taken action in the case. However, the action of the Review Council was approved “by order of the Secretary of the Army” (finding 20(e)) and plaintiff has given no substantial reason why we should look behind that official action.

 Volume 5, Digest of Opinions — The Judge Advocates General of the Armed Forces — Retirement, 23.1, at 498-99.