Terry L. **RENICKER**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 535–86C.

United States Claims Court.

July 13, 1989.

Arthur B. Cunningham, New Philadelphia, Ohio, for plaintiff.

John S. Groat, Dept. of Justice, Washington D.C., for defendant. Lt. Col. William Kirk and Major Paul Cascio, Dept. of the Army, of counsel.

## OPINION

ROBINSON, Judge.

This action for military disability compensation pursuant to 10 U.S.C. §§ 1201 *et seq.* comes before the court on defendant's motion for summary judgment. Plaintiff opposes defendant's motion but has not filed a cross-motion for summary judgment. *See* RUSCC 83.2(e).

In his complaint, plaintiff alleges that a decision by an Army Board for the Correction of Military Records (ABCMR), denying plaintiff's request to reverse an administrative determination that the loss of his left eye was not incurred in the line of duty due to his own misconduct, was not founded upon credible, substantial and competent evidence. Further, plaintiff claims that the Army denied him due process because he was not granted the evidentiary hearing which he demanded. Thus, plaintiff seeks a trial de novo in this court on his line of duty determination. Defendant contends in its motion for summary judgment that plaintiff cannot sustain his burden of proving that the ABCMR decision was arbitrary or capricious. Defendant argues also that plaintiff has waived his right to contest his line of duty determination in this court because he withdrew his request for a formal Physical Evaluation Board (PEB) hearing. For the reasons stated in the opinion which follows, defendant's motion for summary judgment is granted.

## FACTS

While serving on active duty in the United States Army, assigned to 1st BN, 51st Infantry, at Crailsheim, West Germany, plaintiff suffered an injury that resulted in the loss of his left eye. The circumstances of this injury remain in dispute.

At approximately 10:00 p.m. on May 15, 1982, plaintiff, who was not in a duty status, went to a beer hall. As the result of beers he had consumed earlier that day at a platoon party and three beers he consumed at the beer hall, he was, in his own words, "drunk." He became involved in an argument about a chair with Private Joseph A. Peters, an individual whom he did not know. In an ensuing altercation, plaintiff was struck in the left eye with a beer mug or beer bottle.

According to plaintiff, he did not strike or swing at anyone before being struck in the eye. However, according to Private Peters, who hit plaintiff, he did so only after plaintiff began "swinging" at him. Also, according to Private Douglas E. Hively, a witness, Private Peters struck plaintiff after plaintiff punched Peters first.

On October 19, 1982, a Physical Evaluation Board (PEB) found that plaintiff's lack of binocular vision precluded him from the satisfactory performance of duties expected of an infantryman in plaintiff's grade. The PEB recommended permanent retirement with a 40 percent disability rating. The PEB forwarded its conclusion to the Adjutant General, requesting a line of duty determination regarding plaintiff's injury.

Based upon a Criminal Investigation Division (CID) report of the incident, a line of duty investigating officer recommended a finding that plaintiff incurred his injuries "not in the line of duty—due to his own misconduct." The appointing and reviewing authorities approved this finding. Plaintiff appealed this determination, but on November 18, 1983, the Status Determination Division, Department of the Army, concluded "that the evidence is sufficient to support the findings of NOT IN THE LINE OF DUTY—DUE TO OWN MISCONDUCT. The evidence presented in the investigation indicates that Private Renicker was equally at fault in the altercation that caused his injury."

On December 21, 1983, plaintiff's case was returned to the U.S. Army Physical Disability Agency for physical disability processing. On January 10, 1984, plaintiff's civilian counsel, Mr. Arthur B. Cunningham, requested a formal PEB hearing. The request stated: "You are further advised that the Line of Duty Investigation determination that is the predicate for this adverse decision is under appeal."

Plaintiff and his military and civilian counsel received a notice dated February 9, 1984, of plaintiff's formal PEB hearing scheduled for February 27, 1984, at Walter Reed Army Medical Center, Washington, D.C. The notice stated: "You and your counsel ... are advised that a formal PEB hearing is NOT the forum to argue a Line of Duty decision." In a February 27, 1984 memorandum, plaintiff, acting through his military counsel, Captain Aleksandra M. Rohde, withdrew his request for a formal PEB hearing and expressed his understanding "that a formal PEB is not the forum in which to argue a line of duty determination (basis for revision)." The PEB met as scheduled on February 27, 1984, and reaffirmed that plaintiff's injury rendered him unfit for duty. Since plaintiff had received an adverse line of duty determination, the PEB concluded that plaintiff's injury was not compensable under the Army disability program. Thus, plaintiff was separated on March 30, 1984, from active service without military disability benefits.

On May 5, 1984, plaintiff applied to the ABCMR requesting that his record be corrected to show that his injury was incurred in the line of duty upon the grounds that (1) the determination was based upon "perjured" evidence; (2) plaintiff had not been afforded a hearing; and (3) no consideration was given his version of events. In a December 12, 1984 decision, the ABCMR unanimously concluded that the disability proceedings were conducted in accordance with the applicable law and regulations, that no evidence established that the determination was based upon "perjured" evidence, and that the regulations did not require a formal hearing. Thus, the ABCMR denied plaintiff's application.

## DISCUSSION

Summary disposition requires that no genuine dispute exists as to any material

fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The movant has the burden of establishing that there is no material fact in dispute and that it is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Molinaro v. Fannon/Courier Corp.*, 745 F.2d 651, 653–54 (Fed.Cir.1984). The party opposing the motion has the burden of showing sufficient evidence that there is a genuine issue of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor ..." *Anderson v. Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513. Defendant has persuaded the court that its motion for summary judgment should be granted.

■ In the instant case, the court is reviewing plaintiff's separation from active service without military disability benefits "through the prism of a correction board." *Cohn v. United States*, 15 Cl.Ct. 778, 789 (1988). Thus, the court's review is limited:

Once a plaintiff has sought relief from the Correction Board, such plaintiff is bound by that board's determination unless he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due.

*Sanders v. United States*, 219 Ct.Cl. 285, 298, 594 F.2d 804, 811 (1979). Accordingly, to overturn the Correction Board's decision, plaintiff must show by cogent and clearly convincing evidence (1) a material legal error or injustice in the Correction Board's proceeding, and (2) an adequate nexus between the error or injustice and his separation from service without disability compensation. *Hary v. United States*, 223

Ct.Cl. 10, 618 F.2d 704 (1980). Further, plaintiff must overcome the presumption that "administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 813.

■ When reviewing a BCMR decision under a substantial evidence standard, the court may not simply look for evidence which supports a finding of fact. Rather, the court must take into account the weight of countervailing evidence to ascertain whether the fact finder reached a reasonable conclusion. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). While the court might disagree with the BCMR's decision, it cannot substitute its own judgment for the board's if reasonable minds could reach differing resolutions of a disputed fact. *Sanders*, 219 Ct.Cl. 285, 594 F.2d 804 (1979).

The court recognizes that plaintiff's burden of proof is a difficult one to meet. In reaching a final determination on defendant's motion for summary judgment, the court has undertaken a meticulous and exhaustive review of the entire record.

### I.

No member of the Armed Forces may be retired or separated from the service for physical disability without a full and fair hearing if he demands it. 10 U.S.C. § 1214 (1956). A service member's eligibility for disability benefits upon separation from service depends, however, upon whether or not the disability occurred in the line of duty. A service member who incurs a physical disability rendering him unfit for service due to his own misconduct may be separated from service without entitlement to disability benefits. 10 U.S.C. § 1207 (1956).

■ In his application to the ABCMR, plaintiff contested his line of duty determination. Plaintiff claimed that the determination was "based upon perjured evidence, without hearing, and without consideration being given to [plaintiff's] version of the incident." In denying plaintiff's application, the ABCMR concluded:

1. The proceedings were conducted in accordance with applicable law and regulations and the finding of NLOD–DOM was proper . . .

2. Applicant's contention that the investigation was based on "perjured" testimony is not borne out by any evidence in the record or submitted with the application. Applicant's sworn statement was considered in the investigation and no formal hearing is required by applicable regulations. His contentions are without merit.

In appealing the ABCMR's decision, plaintiff claims necessarily that the decision was arbitrary and capricious, or unsupported by substantial evidence. The gravamen of plaintiff's complaint, however, is that the Army denied him a hearing at which he could challenge the adverse line of duty determination by presenting his version of the events causing his injury and by testing the credibility of those witnesses on whose testimony the determination was based. Plaintiff contends that the Army, in violation of its own regulations, specifically advised him that he had no right to a hearing before the PEB. Consequently, plaintiff seeks an order from this court requiring the Army to grant him a hearing on his line of duty determination. Defendant argues that the ABCMR was correct in concluding that no formal hearing is required for a line of duty determination. Further, defendant contends that because plaintiff withdrew his request for a formal PEB hearing and did not appear before the PEB on February 27, 1984, he has waived his right to contest his line of duty determination in this court.

Plaintiff's entire case seems to arise from his misunderstanding of the complex regulatory scheme governing line of duty determinations (Army Regulation 600–33) and physical evaluations for retention, retirement or separation (Army Regulation 635–40).

Army Regulation 600–33 provides for three types of line of duty determinations or investigations: presumptive line of duty findings, informal line of duty investigations, and formal line of duty investigations. ¶ 3–1. A presumptive line of duty finding is made when an injury, disease or death occurred under such circumstances as to imply that it was in the line of duty. ¶ 3–1(b). An informal line of duty investigation, which can result only in a finding of in line of duty, is conducted by the unit commander and attending doctor. They simply gather enough evidence so that the proper authorities can make a line of duty determination. ¶ 3–1(c). A formal line of duty investigation is a detailed investigation. This investigation requires a written report (DD Form 261) and documentary evidence to support the line of duty and misconduct status finding. ¶ 3–1(d).

The special court martial authority for the unit to which a service member is assigned is normally responsible for ordering the formal line of duty investigation when one is necessary. That official appoints an investigating officer, who investigates, assembles, and evaluates the evidence. The investigating officer also makes the initial line of duty findings. ¶ 1–4(g). A.R. 600–33, ¶ 3–2 instructs the investigating officer to consider witnesses' statements and documentary evidence while processing a line of duty action.

A service member who is being investigated may submit evidence or sworn or unsworn statements. ¶ 4–2. That paragraph also provides that the service member will be allowed to be present at the examination of a witness *if* the line of duty investigation goes beyond examining documentary evidence. ¶ 4–2. While interviewing persons who have personal knowledge of the incident is preferred, ¶ 3–2(d) and ¶ 4–3 provide that copies of witnesses' statements taken in another investigation, such as one conducted by the CID, may be used.

A.R. 600–33 does not require a hearing for any line of duty investigation. However, the reviewing and appointing authorities must approve the investigating officer's initial line of duty finding. In addition, a member may appeal an adverse line of duty decision to The Adjutant General, in writing, within 30 days after notice of the line of duty finding. ¶ 3–8. The Adjutant General may change a line of duty

determination if the facts warrant the change. ¶ 3–9.

The Physical Evaluation Board assumes the major role in a member's separation from duty due to a physical disability. The PEB exists

to evaluate all cases of physical disability equitably for the member and the Government. The PEB is not a statutory board. Its findings may be revised. It is a fact-finding board for—

(1) Investigating the nature, cause, degree of severity, and probable permanency of the disability of members who (sic) cases are referred to the board.

(2) Evaluating the physical condition of the member against the physical requirements of the particular office, grade, rank, or rating.

(3) Providing a full and fair hearing for the member concerned.

(4) Making findings and recommendations required by law to establish the eligibility of a member for disability requirement or separation.

Army Regulation 635–40, ¶ 3–10.

On the basis of instructions contained in A.R. 635–40, ¶ 4–18, the PEB decides, among others, (1) whether the service member is fit, or unfit because of physical disability, to perform the duties of his office, grade, rank or rating; (2) whether the disability is the result of intentional misconduct or willful neglect; and (3) whether the disability is permanent or may be permanent according to accepted medical principles.

Paragraph 4–18(g) addresses the PEB's policy and power regarding line of duty determinations. The regulation reiterates that Army policy on line of duty decisions is contained in A.R. 600–33. The regulation does not vest in the PEB the power to make a line of duty determination. The PEB may only decide whether a line of duty determination is sufficient for disability adjudication. However, a PEB is not bound by an informal or formal line of duty investigation report. See also, A.R. 600–33, ¶ 3–10. A PEB may question a line of duty decision because of new, substantial evidence. The PEB does not make a new line of duty determination, though. Rather, the PEB forwards the questioned line of duty decision to The Adjutant General, A.R. 600–33, ¶ 3–10. A.R. 635–40, ¶ 4–18(g) clearly states that the PEB is not the proper forum for the appeal of a line of duty determination. The appeal process is established in A.R. 600–33. While A.R. 635–40, like A.R. 600–33, does not provide for a hearing on the initial line of duty determination, the regulation in no way denies a service member his right to a formal PEB hearing, where he can introduce new, substantial evidence rebutting the line of duty determination. In such cases, the PEB simply returns the case to The Adjutant General for resolution of the line of duty status.

The court is compelled to conclude that the ABCMR applied properly Army regulations in determining that the plaintiff's line of duty proceedings were conducted in accordance with applicable law. It is clear that no formal hearing during the line of duty investigation is required by Army regulations. Further, that plaintiff's sworn statement taken during CID investigation was included in the line of duty investigation record, as provided in A.R. 600–33, indicates that the investigating officer considered that evidence. The weight given to any item of evidence rests with the investigating officer. A.R. 600–33, ¶ 3–2. Thus, the court cannot substitute its own judgment for the board's, or the investigating officer's, since the court determines that reasonable minds could reach differing resolutions based upon the evidence presented in the administrative record. See Sanders, 219 Ct.Cl. 285, 594 F.2d 804 (1979). The board and the investigating officer supported adequately their findings of fact. Even though there is countervailing evidence in the record, the court is of the opinion that the evidence is not of such magnitude to overturn either the board's decision or the investigating officer's line of duty determination.

Plaintiff's claim that the Army denied him his right to a hearing pursuant to 10 U.S.C. § 1214 is inconsistent with the administrative record. The PEB merely in-

formed plaintiff that "a formal PEB hearing is NOT the forum to argue a line of duty decision." This advice is correct in light of A.R. 635–40, ¶ 4–18(g). The Army, however, still scheduled a formal hearing for the plaintiff for February 27, 1984. At that hearing, plaintiff could have appeared and presented "new, substantial evidence" which would result in his case being returned to The Adjutant General. However, plaintiff, through his military counsel, made a voluntary, informed decision to withdraw his request to appear before the formal PEB. Thus, the court finds that the Army in no way denied plaintiff the hearing to which he was entitled pursuant to 10 U.S.C. § 1214.

■ Plaintiff is arguably attempting to challenge the constitutionality of Army Regulations 600–33 and 635–40. The court notes, however, that due process varies with the circumstances. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1965). The Army regulations at issue here provided the plaintiff an extensive right of review of his adverse disability determination. He received notice and the opportunity to respond to the formal line of duty investigation, the opportunity to appeal the line of duty decision, the opportunity to appear before a formal PEB, and the right to apply to the ABCMR for relief. A similar system of review of adverse PEB decision was upheld by this court in *Hopkins v. United States*, 167 Ct.Cl. 1 (1964). There, a Physical Review Council's review of a PEB advisory record, including additional information presented by plaintiff's counsel, was held to constitute a full and fair hearing.

## II.

■ Plaintiff alleged in his application to the ABCMR that the line of duty decision was based on "perjured evidence." This contention merits little discussion. It is not surprising that the ABCMR rejected plaintiff's claim since the application stated bare conclusions. There was no affidavit of any knowledgeable witness attached to the application to support the statement regarding perjured evidence which the ABCMR could consider as a showing of new, sub-

stantial evidence. In this regard, the board was justified concluding that the contention was "not borne out of any evidence in the record or submitted with the application." Indeed, plaintiff also failed to present any evidence in this court that could support his allegation of "perjured" evidence.

■ Finally, the board was also justified in denying plaintiff's request for a personal appearance before the ABCMR. The ABCMR is not required to grant personal appearances to service members. Such hearings are discretionary. *Flute v. United States*, 210 Ct.Cl. 34, 41, 535 F.2d 624, 628 (1976). Plaintiff failed wholly to carry his burden of showing that the documentation supporting the application required his personal appearance before the board.

### CONCLUSION

The court is, of course, sympathetic to the plaintiff's plight as a result of the decision reached by the court in this proceeding. Nevertheless the court, by law, is constrained on the facts of this case to find that plaintiff cannot show, and has not shown, by cogent and clearly convincing evidence, as is his burden, that the decision of the ABCMR is arbitrary or capricious, unsupported by substantial evidence, or contrary to law. Accordingly, defendant's motion for summary judgment is granted. The clerk is directed to dismiss the complaint. No costs.