Scott C. SCHWARTZ, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 91–1193C.

United States Claims Court.

Sept. 8, 1992.

Publication Ordered Sept. 22, 1992.

---

**16.** Noland Aff. para. 4.; Forbess Aff. para. 3.

**17.** Transcript at 23.

Jack E. Carter, Fayetteville, N.C., attorney of record, for plaintiff.

Thomas D. Dinackus, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. David M. Cohen, Director, Thomas W. Petersen, Asst. Director, Lt. Colonel W. Gary Jewell, and Captain W. Renn Gade, Office of the Judge Advocate General, of counsel.

## OPINION AND ORDER

FUTEY, Judge.

This military pay case is before the court on cross-motions for summary judgment. Plaintiff, a former staff sergeant in the United States Army, received severe and permanent injuries in a motorcycle accident. The Army determined that the accident was the result of excessive speed and voluntary intoxication and denied plaintiff disability retirement and benefits. Plaintiff alleges that defendant's determination was not in accordance with military regulations and was arbitrary, capricious, and not supported by substantial evidence. Plaintiff seeks disability retirement pay with benefits, and amendment of his military records to reflect that his injuries occurred in the line of duty. Defendant counters that plaintiff has failed to establish any procedural errors. Defendant also asserts that its decision was based on substantial evidence and was not arbitrary and capricious.

### Factual Background

Plaintiff, Scott C. Schwartz, enlisted in the Army on July 9, 1981, and on September 25, 1987, was promoted to staff sergeant. On the evening of March 25, 1988, while on active duty at Fort Bragg, North Carolina, plaintiff went to an off-post restaurant where he ate pizza and drank beer. After leaving the restaurant plaintiff ran off the road on his motorcycle incurring serious injuries. A North Carolina Highway Patrol officer arrived on the scene. The accident report prepared by the officer

indicates that a chemical test was administered to the plaintiff at the scene. The officer issued plaintiff a citation for improperly passing a vehicle in an area that clearly indicated that passing was prohibited and for driving while intoxicated.

Plaintiff was transported to Womack Army Hospital at Fort Bragg and treated for his injuries. Later that night, plaintiff was transferred to Duke University Medical Hospital where he underwent additional testing and surgery. After plaintiff's condition stabilized, he was transferred back to Womack Hospital.

Plaintiff's unit commander performed an informal line of duty investigation (LDI) on April 25, 1988.[1] The investigating officer concluded that plaintiff's injuries occurred in the line of duty.[2]

On June 1, 1988, a medical evaluation board (MEB) diagnosed plaintiff's injuries. The MEB recommended that plaintiff's record reflect severe permanent physical injuries and that he be referred to a physical evaluation board (PEB). The PEB, on June 7, 1988, determined that plaintiff was unfit for service.

The PEB notified plaintiff that his case had been processed as if a favorable determination had been made, pending a formal line of duty report. The PEB informed plaintiff that if the accident was found to have occurred while not in the line of duty, plaintiff would no longer be eligible for disability retirement benefits. In accordance with the PEB's recommendation, plaintiff was placed on the Temporary Disability Retired List on July 22, 1988, and began to receive disability benefits.

In July 1988, defendant received a North Carolina Highway Patrol report indicating alcohol was involved in plaintiff's accident.

Once the report was received, a formal LDI was ordered and an investigating officer (IO) was assigned to plaintiff's case. An Army memorandum dated December 7, 1988, indicates that a blood alcohol test from Womack was discovered showing that plaintiff's blood alcohol level was .177 percent by volume. The North Carolina legal limit for intoxication is .10 percent by volume. Consequently, plaintiff's disability benefits were suspended on August 10, 1988, pending the outcome of the formal LDI. Thereafter, the IO determined that plaintiff's injuries were not incurred in the line of duty.

On May 22, 1989, plaintiff appealed the line of duty determination to the Army Personnel Command (PERSCOM). On February 26, 1990, PERSCOM denied plaintiff's appeal, finding the evidence of intoxication and excessive speed sufficient to support the line of duty determination of misconduct. These results were automatically forwarded to the PEB.

The PEB reaffirmed its determination that plaintiff's physical condition rendered him unfit to perform the duties of his grade and military occupational specialty. In addition, the PEB upheld PERSCOM's determination that plaintiff's injuries were the result of his own misconduct. Therefore, the PEB recommended that plaintiff be separated from the Army without disability benefits.

On March 20, 1990, plaintiff requested a hearing before a formal PEB. At the hearing, held on May 10, 1990, plaintiff's military counsel presented new evidence. The evidence indicated that the North Carolina State Court charges against plaintiff had been voluntarily dismissed after the district court denied the prosecution a continuance

---

1. A line of duty investigation (LDI) must be performed when a service member is injured. Army Regulations (AR) 600–8–1, ¶ 37–1. There are three types of line of duty determinations in investigations: presumptive line of duty investigations, informal line of duty investigations and formal line of duty investigations. AR 600–33, ¶ 3–1. An informal LDI is made when either there is no indication of misconduct or negligence, or prior to a formal LDI. AR 600–8–1, ¶ 39–2(c). The informal LDI assembles enough evidence so that the proper authorities can make a line of duty determination. AR 600–33, ¶ 3–1(c). A formal LDI is conducted when misconduct is suspected or where alcohol is involved. *Id.* 600–33, ¶ 3–1; *see generally Renicker v. United States,* 17 Cl.Ct. 611, 615 (1989).

2. An informal line of duty determination can only result in a finding of in the line of duty. AR 600–33, ¶ 3–1(c); *see also Renicker v. United States,* 17 Cl.Ct. 611 (1989).

to obtain the blood alcohol test from the Highway Patrol. After considering this additional evidence, and the line of duty determination, the PEB upheld plaintiff's separation without disability benefits. Consequently, plaintiff was honorably discharged without disability retirement or benefits on July 5, 1990.

Plaintiff filed a complaint in this court on June 4, 1991, contesting the validity of the line of duty determination. In the complaint, plaintiff seeks disability pay from the date he was removed from the temporary disability retirement list, correction of his military records to reflect that his injuries resulted in the line of duty, and continued status as a medically retired member of the armed services.

On November 4, 1991, defendant filed a motion for summary judgment asserting that the decision reached by the PEB and PERSCOM is supported by substantial evidence and was not reached capriciously, arbitrarily or contrary to law or regulation. On January 24, 1992, plaintiff filed a cross-motion for summary judgment indicating that he is entitled to a judgment as a matter of law as there is insufficient evidence in the record to support the line of duty determination.

*Discussion*

I.

A. *Jurisdiction*

■ Jurisdiction is founded on the Tucker Act, 28 U.S.C. § 1491, which authorizes suits in the Claims Court where the basis for the claim against the United States is a statute mandating compensation by the government. *United States v. Testan*, 424 U.S. 392, 401–02, 96 S.Ct. 948, 954–55, 47 L.Ed.2d 114 (1976). Pursuant to 10 U.S.C. § 1201, the Secretary of the Army may retire a service member for any disability which did not result from his own misconduct or willful neglect and order that he receive retired pay. This statute provides a basis for Tucker Act jurisdiction. To provide complete relief to a plaintiff entitled to a money judgment, the Tucker Act further provides that "the court may, as an incident of and collateral to any such judg-

ment, issue orders directing the restoration of plaintiff to office or position, placement in appropriate duty or retirement status, and correction of applicable records." 28 U.S.C. § 1491(a)(2); *Voge v. United States*, 844 F.2d 776, 781 (Fed.Cir.), *cert. denied*, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988).

B. *Standard of Review*

■ Plaintiff is bound by defendant's decision unless he can show by "cogent and clearly convincing evidence," *Dorl v. United States*, 200 Ct.Cl. 626, 633, *cert. denied*, 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973), that "the [PERSCOM] decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due." *Sanders v. United States*, 219 Ct.Cl. 285, 298, 594 F.2d 804, 811 (1979). [Citations omitted.]

■ The court's review is not meant to usurp the administrative function. Therefore, this court will "not substitute [its] judgment for the board's when reasonable minds could reach differing conclusions." *Sanders*, at 302. Nevertheless—

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or *if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it,* the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. [Emphasis added.]

*Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985).

■ Plaintiff maintains that this court may review the line of duty determination *de novo*. According to plaintiff, in *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir.1983), the court determined that the plaintiff was entitled to a *de novo* review of the facts in the trial court. In that case,

however, the court stated that the "[a]ppellant was entitled to offer de novo evidence in his presentations to the PEB, to the correction board, and to the district court." *Id.* Thus, plaintiff may offer *de novo* evidence in this court; however, the quoted language does not indicate that plaintiff is entitled to *de novo* review in this court. *See also, Wyatt v. United States*, 23 Cl.Ct. 314, 319 (1991). In fact, in *Heisig*, the court explains that its task is not to reweigh the evidence, but rather only to determine whether the conclusion at issue is supported by substantial evidence. *Heisig* at 1157.

### C. *Summary Judgment*

 Summary judgment is an integral part of the federal rules; it is designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (*quoting* Fed.R.Civ.P. 1). Summary judgment is appropriate when the pleadings raise no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. RUSCC 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party bears the burden of establishing an absence of evidence to support the non-movant's case. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1607, 26 L.Ed.2d 142 (1970). The party opposing summary judgment has the burden of showing sufficient evidence, not necessarily admissible, of a genuine issue of material fact in dispute. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (1986). Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefit of all presumptions and inferences runs. *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir. 1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

To grant summary judgment in the present case, the court must decide, as a matter of law, whether the defendant's determina-tion that plaintiff's injuries were not incurred in the line of duty is arbitrary, capricious, unsupported by substantial evidence, or contrary to law.

### II.

#### A.

The Secretary may retire a service member with disability retirement and benefits, computed under 10 U.S.C. § 1401, if he is unable to perform the duties of his office, grade, rank or rating because of a physical disability incurred in the line of duty while he is on active duty. However, a disability resulting from the "member's intentional misconduct or willful neglect" is not considered to be incurred in the line of duty. 10 U.S.C. § 1201(2). A service member whose injuries are the result of his own misconduct is not entitled to disability benefits; such conduct precludes a finding that his injuries were incurred in the line of duty. *Id.*

There is a presumption that a service member's injury occurs in the line of duty. Army Regulations (AR) 600–8–1, ¶ 39–5(b). This presumption may be refuted by substantial evidence that the injuries did not occur in the line of duty. *Id.* ¶ 39–5(c). To constitute substantial evidence, the evidence must establish a degree of certainty by a preponderance of the evidence, so that a "reasonable person is convinced of the truth or falseness of a fact." *Id.* ¶ 39–5(c).

Although intentional misconduct is not defined by statute, the Army has established guidelines to apply in making line of duty determinations. Thus, "[s]imple or ordinary negligence or carelessness, standing alone, does not constitute misconduct." AR 600–8–1, ¶ 39–5(a). In addition, the violation of civil or criminal laws, if there is no further sign of misconduct, is only simple negligence, not misconduct. AR 600–8–1, app. F, rule 2. Similarly, consumption of alcoholic beverages does not, in itself, constitute misconduct. *Id.* rule 4.

However, "any erratic or reckless conduct caused by the effect of [alcoholic beverages], which directly causes [a service

member's] injury ... is misconduct." AR 600–8–1, app. F, rule 3. Thus, misconduct can be found where a service member drives a vehicle when in an unfit condition, such as when he is voluntarily intoxicated. *Id.* rule 8. Finally, injury resulting from erratic or reckless conduct without regard for personal safety or the safety of others, especially in the operation of a motor vehicle, is not considered in the line of duty as a result of the service member's misconduct. *Id.* rule 9.

### B.

The line of duty report provides the basis for the line of duty determination and any subsequent review. "Line of duty determinations are essential for protecting the interest of both the individual concerned and the U.S. Government, where service is interrupted by injury, disease, or death." AR 600–8–1, § 39–1. Since intentional misconduct or willful negligence prevents a service member from receiving considerable benefits, "it is critical that the decision to categorize [an] injury ... as not in the line of duty only be made after the deliberated and ordered procedures described in this regulation are followed." *Id.* Moreover, the investigation officer (IO) must ensure that the appointing, reviewing, and final approving authorities are presented with enough pertinent information and data to enable their reviews to be made without additional information. *Id.* ¶ 40–8(e)(1).

In performing the LDI, the IO must make findings of fact and append the appropriate statements and documents to the report to support the findings. AR 600–8–1, ¶¶ 39–4. All findings must be supported by evidential exhibits. *Id.* ¶ 40–8(e)(2). Written statements by the IO describing matters personally observed and learned by him should be attached where appropriate. *Id.* Also, the LDI report must include a summary of circumstances and the basis for such findings, reasons for not interviewing the person whose line of duty status is being investigated or any witness whose testimony may be material, comments of the IO on the credibility of statements of witnesses, and a list of exhibits. *Id.* ¶ 40–8(f)(3).

After the IO completes the LDI, the IO and the reviewing authorities evaluate the evidence, considering factors such as a witness's behavior, opportunity for knowledge, information possessed, ability to recall and relate events, and other signs of truth. AR 600–8–1, ¶ 39–5(d). The IO makes the initial determination and then forwards the determination and LDI report to the appointing authority for review. *Id.* ¶ 38–9.

The appointing authority, in turn, refers the report of investigation to the servicing judge advocate for legal review and opinion by a judge advocate or licensed attorney. AR 600–8–1, ¶ 40–9(b). The judge advocate determines whether legal requirements were complied with, ascertains whether any errors committed during the investigation result in material error, and determines whether the findings of the investigation are supported by substantial evidence. *Id.,* ¶ 40–9(b)(1)–(3). On completing its review, the judge advocate sends the results to the appointing authority.

In addition to considering the legal opinions of the judge advocate, the appointing authority reviews the LDI for completeness and accuracy. AR 600–1, ¶ 40–10(a). After reviewing the legal analyses and the LDI report, the appointing authority approves or disapproves the report. The report is then forwarded to a "reviewing authority" and from there, to a "final approving authority." AR 600–8–1, ¶ 40–10(a) and ¶ 40–11(a). If neither of these entities objects, the line of duty determination becomes PERSCOM's final decision.

After PERSCOM makes its final determination, plaintiff has the opportunity to present evidence of error before a formal PEB, which is not bound by prior line of duty determinations. AR 600–8–1, ¶ 41–18. "When a board or council has substantial evidence ... showing that a prior decision may be incorrect for any reason, they must include such evidence in the case record and request PERSCOM ... to review the [line of duty] determination before final disposition of disability processing." AR

635–40, ¶ 3–4(b). The PEB is nevertheless authorized to decide whether, by a preponderance of the evidence, the disability was the result of the service member's misconduct or willful neglect. *Id.* ¶ 4–19(a)(3)(b). While it is not intended that the PEB act as an authority for hearing soldiers' appeals of line of duty determinations, if during a formal hearing the soldier or his counsel presents evidence of error in the LDI, the PEB must consider such evidence. *Id.* ¶ 4–19(g)(2). Such error may concern evidence as to the general appearance and behavior, speech, coordination of muscular effort, and all other facts, observations, and opinions of others bearing on the question of actual impairment. 600–8–1 ¶ 40–8(e)(2)(g). Thus, the PEB relies on the LDI report and the line of duty determination in entertaining evidence of error.

### C.

■ In denying plaintiff's appeal from the line of duty determination, PERSCOM concluded that plaintiff's injuries were not incurred in the line of duty because they resulted from plaintiff's misconduct. According to PERSCOM, the evidence indicated "a loss of control due to intoxication and excessive speed in trying to avoid an oncoming car in a no-passing lane." It is not clear whether PERSCOM found that intoxication or excessive speed alone was sufficient to support their determination, or whether intoxication and excessive speed must be taken as a whole to support a decision of misconduct.

Defendant maintains that PERSCOM's finding of misconduct should be upheld because it is supported by substantial evidence. Defendant asserts that plaintiff's conduct constitutes reckless disregard for his personal safety in violation of AR 600–8–1, app. F, rule 9. Further, defendant argues that the blood alcohol test from Womack Hospital constitutes substantial evidence of intoxication and is sufficient to deny plaintiff benefits under AR 600–8–1,

app. F, rule 3. Thus, defendant concludes that plaintiff's actions provide two independent bases for a finding of misconduct.

Plaintiff counters that there is not substantial evidence to support the conclusion that his conduct constituted intentional misconduct justifying his separation without disability benefits. He contends that his operation of the motorcycle prior to the accident was merely negligent, not reckless. Further, plaintiff argues that the administrative record does not indicate that misconduct was the proximate cause of his injuries. Plaintiff asserts that the evidence relied upon by defendant is invalid and does not constitute substantial evidence of misconduct. Therefore, according to plaintiff, defendant has failed to overcome the statutory presumption that a service member's injuries occurred in the line of duty. *See* AR 600–8–1, ¶ 39–5(b).

In support of his contentions, plaintiff points to the police report prepared by the North Carolina Highway Patrol officer. Plaintiff notes that the report is based primarily on Cherie Aberley's (Aberley), an eyewitness to the accident, recollection of the events preceding the accident. Therefore, plaintiff avers that the report's indication of excessive speed constitutes nothing more than a recitation of Aberley's speculation. Plaintiff disputes whether a blood alcohol test was performed during his treatment at Womack. Plaintiff also disputes the finding of intoxication.

### D.

At each step in the review process, the LDI report provides the basis for review. However, the LDI report is absent from the record. Without the conclusions reached by the IO in the LDI report in the record, as well as the results of the various levels of review, meaningful review by this court is precluded. The court simply has nothing to review.[3] The record before this

---

3. Plaintiff received a letter from the Army Personnel Command (PERSCOM) in which PERSCOM stated that plaintiff was voluntarily intoxicated and traveling at an excessive speed while in a no passing lane and that this action consti-

tuted misconduct. This letter does not provide an adequate basis for review of the administrative decision. The letter only contains conclusions without any analysis as to how the conclusions were reached. Nor does the letter provide

court does not include the IO's LDI report or his line of duty determination. According to Army regulations this document must be included in the administrative record. AR 600–8–1, ¶ 40–8(f)(7). There is no mention of why this form is not present in the record and without the form this court has no knowledge of what the IO concluded to be the facts and what evidence he gathered. Finally, the record before the court contains only conclusions of fact without any reasoned analysis as to how those conclusions were reached.

Although the record contains a statement from Aberley, there is no indication who obtained Aberley's statement or when it was acquired. There is also no evaluation of Aberley's credibility or the weight her testimony should be given. Nor is Aberley's statement in the form of an affidavit or signed statement. This violates the requirement that "a statement by the IO should not be used as a substitute for witness statements when such can be obtained." AR 600–8–1, ¶ 40–8(e)(2). "Sworn statements carry more weight than unsworn statements and are the preferred evidence" although persons making statements may be sworn at the discretion of the IO. AR 600–8–1, ¶ 41–15. There is no indication in the record as to why an affidavit or sworn statement was not obtained.

Additionally, the blood alcohol test performed at Womack is handwritten, illegible, and unauthenticated.[4] There is no indication as to who ordered the test or who was responsible for entering the test results on the card. The record is devoid of any explanation as to why this information is unavailable or why the test was carelessly produced. Without this information it is difficult to determine whether the test constitutes reliable evidence of intoxication.

Finally, the record before this court contains contradictory evidence as to the plaintiff's sobriety. The Statement of Medical Examination and Duty Status report prepared by Curtis L. Bentz (Bentz), the patient administrator at Womack, states that plaintiff was not intoxicated the night of the accident and that no blood alcohol test was performed. Bentz was not interviewed to reconcile this conflicting evidence. In addition, the record does not include an interview with Gregory S. Georgiade, the doctor at Duke University Hospital, who described plaintiff on the night of the accident as an "intoxicated white male" in a discharge summary. The record fails to explain why these witnesses were not located and interviewed. The IO is required to interview any material witnesses or explain why the witnesses are not questioned. AR 600–8–1, ¶ 40–8(f)(3)(c). Before a meaningful review of the line of duty determination can be made, these factual discrepancies must be resolved.

In addition to the conflicting medical evidence, a conflicting recitation of events is contained in the record. During the formal PEB hearing, plaintiff's military counsel stated that, just prior to the accident, plaintiff remembers the car in front of him leaving the pavement and stirring dirt up into plaintiff's face. The record fails to indicate whether plaintiff was interviewed and, if so, why his testimony was not included in the report or, if not, why he was not interviewed. In short, there is no indication that the IO or reviewing entities attempted to reconcile the conflicting evidence in this case before concluding that plaintiff's injuries were not in the line of duty due to plaintiff's misconduct.

The record is also devoid of any discussion of the distinction between recklessness and negligence and whether plaintiff's con-

---

any indication as to how much weight was attached to the evidence cited in the letter. There is also no review of the credibility of the evidence.

**4.** "All exhibits attached to the [line of duty] report, which are not originals, must be of sufficient quality to reproduce legible copies" and "when possible the original copy of each exhibit will be attached." AR 600–8–1, ¶ 40–8(f)(5).

"Results of any blood, breath, urine, or tissue tests for the intoxicating agent should be submitted as exhibits and the actual lab slip should also be obtained and submitted as exhibits (actual lab slip if possible)." *Id.* ¶ 40–8(e)(2)(g). There is no mention in the record as to why the original slip was not produced or included as an exhibit.

duct was negligent or reckless. *See also Wagoner v. North Carolina R. Co.*, 238 N.C. 162, 168, 77 S.E.2d 701, 706 (1953). This distinction is crucial as a finding of negligence does not result in separation without disability retirement benefits, while a finding of recklessness does. However, there is no indication that the IO or the reviewing authorities considered the distinction.

In addition to failing to indicate whether the evidence was evaluated in a meaningful manner, the record contains no indication that PERSCOM considered whether the evidence supported the conclusion that plaintiff's injuries were caused by his alleged misconduct. In order for intoxication alone to be the basis for a determination of misconduct with respect to an injury, there must be a clear showing that the impairment was due to intoxication and the intoxication was the proximate cause of the injury. AR 600-8-1, ¶ 41-10(b). The evidence in the record does not provide any discussion of this requirement or indicate how the IO and reviewing agencies' basis for finding that this standard was met.

Further, the record is devoid of any evidence indicating that the IO considered the facts surrounding the accident, such as the speed of the vehicle, road factors, or the part other vehicles played in creating the conditions which were responsible for the accident. *See* AR 600-8-1, ¶ 41-13(a)-(c). If plaintiff's statement of the facts is correct, the automobile driven by Aberley could have contributed to the accident by kicking dirt into the plaintiff's face just prior to when the plaintiff lost control of his motorcycle. The record fails to account for this discrepancy.

In conclusion, based on the incomplete record before this court, summary judgment is inappropriate. Issues of fact exist concerning the validity of the evidence cited by defendant and whether that evidence supports a finding of causation.

Accordingly, this case is remanded to PERSCOM. "In any case within its juris-

diction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. § 1491(a)(2) (1988); *Barth v. United States*, 24 Cl.Ct. 836, 842 (1991). PERSCOM is the appropriate administrative body for remand since it is charged with responsibility for making the final line of duty determination. AR 600-8-1, ¶ 38-3(a). Hence, this matter is remanded to PERSCOM for explanation and supplementation of its line of duty determination in light of the court's opinion.[5]

For the foregoing reasons, cross-motions for summary judgment are denied without prejudice. This matter is remanded to PERSCOM in accordance with RUSCC 60.1 for a period of 6 months.

The proceedings before this court are suspended until March 8, 1993. The parties are directed to file joint reports indicating the status of proceedings on remand at intervals of 60 days, commencing with the date of this Opinion and Order. The first report shall be filed by November 9, 1992.

---

5. A remand is not "merely for the purposes of rewriting the opinion so that it will superficially comply" with regulatory requirements, but rath-

er, it is meant "to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991).